The STATE of Ohio, Appellee,

v.

HURST, Appellant.

[Cite as *State v. Hurst*, 181 Ohio App.3d 454, 2009-Ohio-983.]

Court of Appeals of Ohio,
Fifth District, Licking County.

No. 2008–CA–0104.

Decided March 6, 2009.

456

Ken Oswald, Licking County Prosecuting Attorney, for appellee.

Robert C. Bannerman, for appellant.

GWIN, Judge.

{¶ 1} Defendant-appellant, Mark E. Hurst, appeals from his convictions and sentences in the Licking County Court of Common Pleas on one count of pandering obscenity involving a minor, a felony of the fourth degree in violation of R.C. 2907.321(A)(5); one count of pandering sexually oriented matter involving

a minor, a felony of the fourth degree in violation of R.C. 2907.322(A)(5); and one count of illegal use of a minor in nudity-oriented material or performance, a felony of the fifth degree in violation of R.C. 2907.323(A)(3). Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE CASE AND FACTS

{¶ 2} Appellant worked for Robertson Construction Company in Licking County during the month of April 2007. Appellant was a field employee and had been injured on the job. Accordingly, appellant was placed on light duty and assigned to work in the office during that month.

{¶ 3} On April 25, 2007, Theresa Ruby, appellant's direct supervisor, claimed to have witnessed appellant viewing pornography on a newly added computer station. She testified that she had found appellant "in the other office." When Ruby walked behind appellant, she testified that she believed she saw him looking at "pictures of naked women."

{¶ 4} Christian Robertson, of Robertson Construction contacted their outside computer information technology ("IT") person, Richard Day, and the police. Day testified that the computer appellant had been using had been installed at Robertson Construction approximately one week prior to this incident. Day looked at the computer's hard disk drive, the "C" drive, in an attempt to discover whether anyone was downloading anything that he or she should not have been. His investigation did not find any physical evidence of inappropriately download-ed material or unauthorized folders created by someone using that computer workstation. However, when Day looked in the "temporary internet files" folder contained on the computer's hard disk drive, he found over 20,000 pictures. Upon opening and viewing several of the pictures, Day realized they were pornographic photographs. Day "locked down" the computer and suggested to Christian Robertson that he contact the police. Later that afternoon, Officer Brandy Huffman arrived at the scene to collect the computer. At her request, Day made two copies of the photographs found on the computer's hard drive to a CD–ROM to be used as evidence by the police.

{¶ 5} Diamond Boggs, a forensic computer expert with the Bureau of Criminal Identification and Investigation, testified that she had specific training related to detecting "virtual" children. She used this training while looking at the computer pictures at issue in the instant case. Boggs testified that the computer's hard drive contained approximately 14,000 photographs, which had been accessed April 20 through April 25, 2007. Boggs further testified that she found pictures that she believed to be child pornography or adult pornography, and some that could be either. She testified that in her expert opinion, virtual photographs of children are distinguishable from real children. She further testified that she did

not find any indication that the photographs at issue were virtual, as opposed to real, children. In fact, despite her training in the area of detecting photographs of virtual children, she testified that there was "nothing that tells me that they are not real children." Boggs explained that the person who had used the computer manually typed terms into the search engine in order to search for websites associated with child pornography. In fact, in one such search the individual made a typographical error by initially typing tinyteenthungs.info, only to have to correct it. Boggs characterized the individual's access to these types of web pages as "[n]ot an accidental viewing of child pornography." Fifty pictures from the over 14,000 pictures found on the computers hard drive were selected by Boggs as possible child pornography. All of the 50 images were found in the computer's temporary internet cache folder. Those pictures were admitted into evidence at appellant's jury trial.[1]

{¶ 6} Appellant was interviewed by the police and confessed that he had used the computer to view pornography. He admitted that 70 percent of the time that he had spent on the computer while at work he was viewing pornographic web sites. He also testified the he had "very—almost embarrassing computer skills. * * * I would have to have some basic computer skills." Appellant claimed that his co-workers told him, "Just get on it and play with it. It will come to you." Appellant testified that he "wasn't aware of what a site was at the time. I would just click on an image and another page could come up." Appellant did not know any of the web page addresses. However, appellant testified that his wife caught him viewing pornographic websites on his home computer approximately eight years ago.

{¶ 7} Appellant testified that he did not know any of the web-page addresses. Appellant also testified that the pages he visited would have "[pictures in an array arranged] 10 by 10 which would be 100 per page per screen" and that he did not look at all of the pictures on every screen. Appellant testified that three times "[web] pages would start to come up so fast and overlap that I couldn't stop them, so I would go up to the corner where the little x is and I would keep clicking on it, and it didn't stop it at all, so I crawled under the desk to unplug it [the computer]." Appellant further testified "hundreds and hundreds if not thousands and thousands" of websites or pages came up and he did not see the content of any of these pages. At trial, appellant specifically denied seeing any nude children or children engaged in sexual acts on the computer. Finally, appellant testified, "somehow child pornography ended up on.that computer. I

---

1. Boggs explained that there were actually 52 pictures; however, two of the photographs were duplicates.

don't know how it got there and obviously other people don't know how it got there either."

{¶ 8} In his interview with the police, appellant described his affinity to pornography and attempted to downplay it:

{¶ 9} "It * * * it's never been to a point of touching a kid or any kid that I see, you, you know. There's no attraction or any, you know, uh-young lady. Um * * * always been, you know * * * viewing pictures. * * * I am more a viewing thing, than an actual physical thing, you know."[2]

{¶ 10} On or around July 24, 2008, appellant and his counsel signed a pleading titled "Defendant's Agreement to Amendment of Indictment," which was filed July 25, 2008. The agreement purported that appellant understood that his indictment was defective and that a "reckless" mental state was not present in the indictment. Appellant also agreed to waive his appellate rights with respect to the indictment defect and consented to an amendment of the indictment.[3]

{¶ 11} Appellant was convicted by the jury on all three counts in the indictment. The trial court sentenced appellant to 15 months on the charge of pandering obscenity involving a minor, 15 months on the charge of pandering sexually oriented matter involving a minor, and nine months on the charge of illegal use of a minor in nudity-oriented material or performance, with all three sentences running consecutively, for an aggregate sentence of 39 months. Appellant was also classified as a Tier 1 sexual offender.

{¶ 12} Appellant timely appeals, raising the following assignments of error:

{¶ 13} "I. Appellant's conviction for illegal use of a minor in nudity-oriented material was void as a matter of law for failing to state a culpable mental state.

{¶ 14} "II. Appellant's conviction was not supported by sufficient evidence and/or was against the manifest weight of the evidence."

I

{¶ 15} Appellant argues in his first assignment of error that the indictment in this case failed to charge all the essential elements of the offense of illegal use of a minor in nudity-oriented material or performance because the indictment failed to charge the mens rea required for the crime. Accordingly, appellant maintains that he did not receive a constitutional indictment or trial,

---

2. State's Exhibit 8–A and 8–B.

3. A review of the trial court's docket does not indicate that any such indictment amendment occurred.

and therefore the defective indictment in this case resulted in structural error. We disagree.

{¶ 16} *State v. Colon,* 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, concerned an indictment for robbery in violation of R.C. 2911.02(A)(2), which provides:

{¶ 17} "No person, in attempting or committing a theft offense * * * shall do any of the following: * * *

{¶ 18} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm."

{¶ 19} The *Colon* court held:

{¶ 20} "R.C. 2911.02(A)(2) does not specify a particular degree of culpability for the act of 'inflict[ing], attempt[ing] to inflict, or threaten[ing] to inflict physical harm,' nor does the statute plainly indicate that strict liability is the mental standard. As a result, [pursuant to R.C. 2901.21(B),] the state was required to prove, beyond a reasonable doubt, that the defendant recklessly inflicted, attempted to inflict, or threatened to inflict physical harm." *Colon,* 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶ 14.

{¶ 21} Relative to this assignment of error, appellant in this case was indicted in Count III of the indictment on illegal use of a minor in nudity-oriented material or performance, a felony of the fifth degree, in violation of R.C. 2907.323(A)(3), which provides:

{¶ 22} "(A) No person shall do any of the following:

{¶ 23} " * * *

{¶ 24} "(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies:

{¶ 25} "(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.

{¶ 26} "(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred.

{¶ 27} " * * * * "

{¶ 28} In *State v. Young* (1988), 37 Ohio St.3d 249, 257, 525 N.E.2d 1363, reversed on other grounds by *Osborne v. Ohio* (1990), 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98, the Supreme Court of Ohio concluded that "recklessness" is the culpable mental state required to constitute a violation of R.C. 2907.323(A)(3). Citing *State v. Colon,* appellant argues that because the indictment fails to expressly charge the mens rea element of the crime of illegal use of a minor in nudity-oriented material or performance under R.C. 2907.323(A)(3), the indictment is fatally defective.

{¶ 29} As this court noted in *State v. Vance,* Ashland App. No.2007–COA–035, 2008-Ohio-4763, 2008 WL 4286633, the Supreme Court reconsidered *State v. Colon ("Colon I")* in *State v. Colon ("Colon II")*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169. In *Colon II,* the court held:

{¶ 30} "Applying structural-error analysis to a defective indictment is appropriate only in rare cases, such as *Colon I,* in which multiple errors at the trial follow the defective indictment. In *Colon I,* the error in the indictment led to errors that 'permeate[d] the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence.' Id. at ¶ 23, citing *State v. Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 17. Seldom will a defective indictment have this effect, and therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim.R. 52(B) plain-error analysis." Id. at ¶ 8. The court noted the multiple errors that occurred in *Colon I:*

{¶ 31} "As we stated in *Colon I,* the defect in the defendant's indictment was not the only error that had occurred: the defective indictment resulted in several other violations of the defendant's rights. 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶ 29. In *Colon I,* we concluded that there was no evidence to show that the defendant had notice that recklessness was an element of the crime of robbery, nor was there evidence that the state argued that the defendant's conduct was reckless. Id. at ¶ 30. Further, the trial court did not include recklessness as an element of the crime when it instructed the jury. Id. at ¶ 31. In closing argument, the prosecuting attorney treated robbery as a strict-liability offense. Id." *Colon II* at ¶ 6. See also *Vance* at ¶ 51–53.

{¶ 32} Unlike *Colon I,* the four prongs necessary to establish structural error are not met in this case. First, the appellant had notice that recklessness was an element of the crime of illegal use of a minor in nudity-oriented material or performance. In fact, a formal agreement to have the indictment amended was filed by the appellant. Second, at trial, the jury was properly instructed on the appropriate mens rea of recklessness. Finally, the state argued that the appellant's conduct was reckless.

{¶ 33} Accordingly, this is not a case where the omission in the indictment permeated the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence. Id. at ¶ 27. In the case at bar, appellant did not object to the indictment or to the court's instructions to the jury, and therefore, failed to preserve his claim that the indictment against him was constitutionally defective. See *State v. Ellis*, Guernsey App. No. 2007–CA–46, 2008-Ohio-7002, 2008 WL 5427980, at ¶ 26. As structural error is not present in this case, this court may analyze the error in this case pursuant to the Crim.R. 52(B) plain-error analysis. *Colon II*, at ¶ 7.

{¶ 34} Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined that, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to prevent a manifest miscarriage of justice. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240; *State v. Long*, paragraph three of the syllabus; *Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 14.

{¶ 35} Under the circumstances of the case at bar, there is nothing in the record to show that the appellant was prejudiced. Where the defendant had notice through the arguments of counsel that recklessness was the mens rea for the crime charged, the state did not treat illegal use of a minor in nudity-oriented material or performance as a strict-liability offense, the trial court correctly informed the jury as to the definition of "recklessness" and the defendant did not object, the defendant fails to establish that "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. See also *State v. McMillen*, Stark App. No. 2008–CA–00122, 2009-Ohio-210, 2009 WL 131901, at ¶ 45.

{¶ 36} We find that any error in the indictment was harmless beyond a reasonable doubt.

{¶ 37} Appellant's first assignment of error is denied.

## II

{¶ 38} The appellant next claims that all three of his convictions are improper as being supported by legally insufficient evidence and/or against the manifest weight of the evidence. We disagree.

{¶ 39} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence, that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541 ("sufficiency is a test of adequacy"); *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *Jenks,* 61 Ohio St.3d at 273, 574 N.E.2d 492.

{¶ 40} The issue of the weight of the evidence addresses the evidence's effect of inducing belief. *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 25–26. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? * * * [E]ven though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings." Id. at ¶ 26. However, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Accordingly, reversal on manifest-weight grounds is reserved for " 'the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, 678 N.E.2d 541, quoting *Martin* at 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 41} Employing the above standard, we believe that the state presented sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that appellant committed the offenses as charged in the indictment.

{¶ 42} In the case at bar, appellant was convicted of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(5), which provides:

{¶ 43} "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

{¶ 44} " * * *

{¶ 45} "(5) Buy, procure, possess, or control any obscene material, that has a minor as one of its participants.

{¶ 46} " * * * * "

{¶ 47} Appellant was further convicted of one count of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(5), which provides:

{¶ 48} "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

{¶ 49} " * * *

{¶ 50} "(5) Knowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality;

{¶ 51} " * * * "

{¶ 52} Finally, appellant was convicted of one count of illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3), which provides:

{¶ 53} "(A) No person shall do any of the following:

{¶ 54} " * * *

{¶ 55} "(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies:

{¶ 56} "(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.

{¶ 57} "(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred.

{¶ 58} " * * * "

{¶ 59} Specifically, appellant alleges that the prosecution's case failed in two respects: (1) failing to exclude the possibility that the pictures at issue were "virtual" children and (2) failing to show that the appellant had the required mens rea for the respective offenses.

{¶ 60} In *State v. Tooley,* the Ohio Supreme Court held that, despite advances in technology, " '[j]uries are still capable of distinguishing between real and virtual images.' " *Tooley,* 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, at ¶ 50, quoting *United States v. Kimler* (C.A.10, 2003), 335 F.3d 1132, 1142.

The court further held that R.C. 2907.322(B)(3), which states, "In a prosecution under this section, the trier of fact may infer that a person in the material or performance involved is a minor if the material or performance, through its title, text, visual representation, or otherwise, represents or depicts the person as a minor," is not overbroad but merely allows the state to prove its case with circumstantial evidence. *Tooley* at ¶ 2, 33. The inference permits, but does not require, a fact-finder to infer the age of the person depicted in an image. *Tooley* at ¶ 35; *State v. Brady,* 119 Ohio St.3d 375, 894 N.E.2d 671, 2008-Ohio-4493, at ¶ 34. In *Ashcroft v. Free Speech Coalition* (2002), 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403, the Supreme Court expressed doubt that images of actual children and simulated children were indistinguishable:

{¶ 61} "If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice." 535 U.S. at 254, 122 S.Ct. 1389, 152 L.Ed.2d 403.

{¶ 62} In the case at bar, the actual images were submitted to the jury. Further, as previously noted, Diamond Boggs, a forensic computer expert with the Bureau of Criminal Identification and Investigation, testified that she did not find any indication that the photographs at issue were virtual, as opposed to real, children. In fact, despite her training in the area of detecting photographs of virtual children she testified that there was "nothing that tells me that they are not real children."

{¶ 63} The fact-finder in this case, the jury, was capable of reviewing the evidence to determine whether the state met its burden of showing that the images depicted real children. *Tooley,* 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, at ¶ 54. With respect to the images supporting the convictions, this court has also viewed them and has concluded that real children were involved. Id.

{¶ 64} We therefore hold that the state presented sufficient evidence that the children depicted were real children to support appellant's convictions.

{¶ 65} Appellant next argues that the state failed to show that he had the required mens rea for the respective offenses. Appellant claims that the images were automatically stored by the web browser in the computer's temporary cache files; there is no evidence that he accessed or viewed the pornographic materials stored therein.

{¶ 66} We note that recklessness is the requisite mens rea for pandering obscenity involving a minor, in violation of R.C. 2907.321(A)(5), and illegal use of a minor In nudity-oriented material or performance, in violation of R.C.

2907.323(A)(3). *State v. Tooley*, 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, at ¶ 37; *State v. Young*, 37 Ohio St.3d at 253, 525 N.E.2d 1363, reversed on other grounds by *Osborne v. Ohio* (1990), 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98. Pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(5) explicitly requires that the offender act "knowingly."

{¶ 67} In *United States v. Polizzi* (E.D.N.Y.2008), 549 F.Supp.2d 308, 343, 347, the court highlighted how computers and the internet can create a quagmire for the prosecution of cases involving child pornography:

{¶ 68} "Online child pornography (or any other electronic image) is typically received and viewed via email, downloading, or file sharing, or viewed on an Internet website. Unwanted or unsolicited emails, popularly termed 'spam,' are transmitted daily in the billions. See *United States v. Kelley*, 482 F.3d 1047, 1055–56 (9th Cir.2007) (Thomas, J., dissenting). Many carry commercial messages, are dubious or disguised in nature and origin, and contain pornographic images, including child pornography, or links to pornographic websites. Id. at 1056. In one study, ' "more than 40 percent of all pornographic spam either did not alert recipients to images contained in the message or contained false subject lines, thus 'making it more likely that recipients would open the messages without knowing that pornographic images will appear.' " ' Id. (quoting United States Senate Committee on Commerce, Science, and Transportation, CAN–SPAM Act of 2003, S.Rep. No. 108–102, at 4 (2003), 2004 U.S.C.C.A.N. 2348, 2351).

{¶ 69} "Opening files—whether received by email or available on a website—in order to view the images may be automatic or manual. Files deliberately downloaded from the Internet and intentionally saved by the user should be distinguished from files automatically stored by the web browser in temporary cache files. *See generally* Ty E. Howard, *Don't Cache Out Your Case: Prosecuting Child Pornography Possession Laws Based On Images Located in Temporary Internet Files*, 19 Berkeley Tech. L.J. 1227 (2004). 'The term "downloading" generally refers to the act of manually storing a copy of an image on the hard drive for later retrieval.' *United States v. Romm*, 455 F.3d 990, 993 n. 3 (9th Cir.2006), *cert. denied*, 549 U.S. 1150, 127 S.Ct. 1024, 166 L.Ed.2d 772 (2007). In contrast, '[t]he internet cache * * * is an area [on the hard drive] to which the internet browser automatically stores data to speed up future visits to the same websites.' Id.

{¶ 70} "While you surf the Internet, the computer's 'web browsers keep copies of all the web pages that you view, up to a certain limit, so that the same images can be redisplayed quickly when you go back to them.' Id. at 993 n. 1 (quoting Douglass Downing, et al., Dictionary of Computer and Internet Terms 149 (Barron's 8th ed. 2003)). It is possible for sophisticated computer users to access and even 'delete' the automatically stored internet cache files, but computer

forensic experts are often able to discover any files so deleted. *See Howard,* supra, at 1228; Steve Silberman, *The United States of America v. Adam Vaughn,* Wired News, Issue 10.10, Oct. 2002, at 3 ('If your computer is searched, even files that have been dragged to the trash or cached by your browser software are counted as evidence. Some offenders have been sent to jail for "possessing" images that only a computer-forensics technician can see.'). *But cf.* 18 U.S.C. § 2252(c) (providing for the limited affirmative defense discussed below).

{¶ 71} " * * *

{¶ 72} "Once a computer receives an illicit image by any method, whether spam email, intentional downloading, loading of a CD–ROM, file sharing, etc., the computer user possesses 'matter' containing child pornography, even before viewing the electronic screen. The images are in the computer and available for viewing. When he or she intentionally or unintentionally sees the child pornography pictures, the user 'knowingly possesses' them—even if the images were unsolicited, unwanted, or a complete surprise. The possession charged is purely passive."

{¶ 73} Unlike the federal statutes prohibiting possession of child pornography, Ohio's statutory scheme does not contain any "affirmative defenses" or "safe harbor" provisions for the accidental or unintentional access to forbidden material. For example, Section 2252(c), Title 18, U.S.Code, provides:

{¶ 74} "It shall be an affirmative defense to a charge of violating paragraph (4) of subsection (a) that the defendant—

{¶ 75} "(1) possessed less than three matters containing any visual depiction proscribed by that paragraph; and

{¶ 76} "(2) promptly and in good faith, and without retaining or allowing any person, other than a law enforcement agency, to access any visual depiction or copy thereof—

{¶ 77} "(A) took reasonable steps to destroy each such visual depiction; or

{¶ 78} "(B) reported the matter to a law enforcement agency and afforded that agency access to each such visual depiction." See also *Polizzi,* 549 F.Supp.2d at 348.

{¶ 79} The court in *Polizzi* detailed the conundrum created in criminal law by attempting to engraft traditional notions of what constitutes "possession" and "receipt" upon this emerging electronic technology:

{¶ 80} "Does looking at online child pornography, for instance, automatically entail possession? Receipt? *See United States v. Perez,* 247 F.Supp.2d 459, 484 n. 12 (S.D.N.Y.2003) ('Whether the [child pornography] statute reaches mere internet "browsing" is something of an open question. The statute does not

criminalize "viewing" the images, and there remains the issue of whether images viewed on the internet and automatically stored in a browser's temporary file cache are knowingly "possessed" or "received." "); *Howard,* supra, at 1266–68. Does receipt of illicit images via computer automatically result in possession? *See United States v. Kamen,* 491 F.Supp.2d 142, 152 (D.Mass.2007) (establishing that possession is a lesser included offense of receipt of child pornography as a matter of law). Or does possession result in receipt? *See United States v. Romm,* 455 F.3d at 998 ('[W]hether [defendant] "received" the images in his cache depends on whether he knowingly took possession of them.'). What is the difference, if any, between possession and receipt? Must the pictures be saved or downloaded to the hard drive to establish possession, or can they be stored temporarily on internet cache files? *Compare United States v. Stulock,* 308 F.3d 922, 925 (8th Cir.2002) (defendant could not be 'guilty of possession for simply having viewed an image on a web site, thereby causing the image to be automatically stored in the browser's cache, without having purposely saved or downloaded the image.') *with Romm,* 455 F.3d at 999 (upholding conviction based on forty deleted images from the internet cache). Does possession continue after the computer user deletes—out of revulsion for the images—all normally accessible (but perhaps not all inaccessible hard drive) computer files? Application of the statute requires an exceptionally high appreciation of the abstract concepts involved, one not likely to be within the ken of the average layperson." *Polizzi,* 549 F.Supp.2d at 351–352.

{¶ 81} The distinction between "viewing" and "possession" has been characterized in a variety of ways. For example, in *Commonwealth v. Simone,* 63 Va.Cir. 216, 2003 WL 22994238, the court used the following:

{¶ 82} "By analogy, one might consider the following hypothetical. If a person walks down the street and notices an item (such as child pornography or an illegal narcotic) whose possession is prohibited, has that person committed a criminal offense if they look at the item for a sufficient amount of time to know what it is and then walks away? The obvious answer seems to be 'no.' However, if the person looks at the item long enough to know what it is, then reaches out and picks it up, holding and viewing it, and taking it with them to their home, that person has moved from merely viewing the item to knowingly possessing the item by reaching out for it and controlling it."

{¶ 83} As noted by Ty E. Howard, "There are two conceptual approaches to determining whether cached images constitute knowing possession. The first approach places legal significance on the images found in a cache, and it holds that the presence of those images within the cache constitutes actual knowing possession of child pornography at the time the images are found (hereinafter 'the Present Possession approach'). The second, alternative approach places

legal significance on the images that the computer user sought out and placed on his computer screen. This approach holds that the copies of images found in a cache constitute evidence of some prior (but no less real) knowing possession (hereinafter 'the Evidence Of approach'). No court has discussed which conceptual approach it was following. To the contrary, it appears from the format and substance of the analyses that every court has defaulted to the Present Possession approach without even recognition of other conceptual models." 19 Berkeley Tech.L.J. at 1254–1255.

{¶ 84} Howard suggests that the "Evidence Of" approach is more suited to take into account the automatically stored internet cache files. Accordingly, under this approach, "the most difficult and incongruous defense facing prosecutors—lack of knowledge—is rendered irrelevant. Thus, the focus of child pornography possession is no longer the cached files as contraband themselves, but rather their evidentiary value to prove the previous possession of contraband—the actual images on the user's screen." Id. at 1271–1272. Thus, "knowledge of the cache operation is irrelevant because criminal liability arises not from the cached images themselves, but rather from the images that the user originally searched for, selected, and placed on his computer screen." Id. at 1257.

{¶ 85} Applying the foregoing to the facts adduced at trial in appellant's case, we conclude that the state presented sufficient evidence to establish that appellant sought out the images and exercised dominion and control over them. In this case, there is evidence that the images on appellant's computer did not appear by default.

{¶ 86} The state introduced evidence of the search terms and file names associated with appellant's computer activity. Boggs testified that the appellant's use of the computer involved included actually typing in search terms to search for websites. These search terms and file names included "amazing preteen; elite preteens; family incest tree; free young; young porn; innocent youth; preteen angels; and shameless preteens, little angels, top ten Lolita nude and pixyoung.com, teentray.com, tinyteenthongs.info." Boggs testified that these search terms were commonly used in attempts to locate child pornography on the Internet. In fact, access to some of these pages was repeated, thus making it clear to a reasonable juror that an "accidental" viewing was not taking place.

{¶ 87} The jury further heard evidence of appellant's admissions. The following exchange appears in his interview with Det. Robert Huffman of the Newark Police Department:

{¶ 88} "RH: Ok. Would you agree that some of the sites that you viewed did have children—

{¶ 89} "MH: Yes, yes there did—

{¶ 90} "RH: Underage children?

{¶ 91} "MH:—but I, yes. Uh I did not know that just a click and a punch was, was illegal but it obviously is and um—

{¶ 92} "RH: Ok. But you, the click and the punch lead to you viewing these photos.

{¶ 93} "MH: Right, right. I mean they came up yes when I clicked and punched, these pictures came up."

{¶ 94} Appellant's use of search terms to certain types of websites demonstrates his affirmative actions to obtain certain images and place them on his computer screen. The search terms themselves are further evidence of appellant's knowledge of the content of those images. The evidence shows that appellant voluntarily reached out for and brought to his computer screen the images in question. Therefore, his knowledge, or lack thereof, of the cache operation is irrelevant.

{¶ 95} After reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found beyond a reasonable doubt that appellant recklessly possessed the material in question.

{¶ 96} We hold, therefore, that the state met its burden of production regarding each element of the crimes and, accordingly, there was sufficient evidence to support appellant's convictions.

{¶ 97} "A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard*, 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88, 11 S.Ct. 720, 724–725, 35 L.Ed. 371 (1891)." *United States v. Scheffer* (1998), 523 U.S. 303, 313, 118 S.Ct. 1261, 140 L.Ed.2d 413.

{¶ 98} Although appellant cross-examined the witnesses and argued that he did not intentionally view any offending images and that he had no knowledge of the existence or contents of the internet cache folder, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180.

{¶ 99} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the

manifest weight or sufficiency of the evidence." *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP–739, 2000 WL 297252, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09–1236, 1996 WL 284714. Indeed, the jurors need not believe all of a witness's testimony, but may accept only portions of it as true. *State v. Raver*, Franklin App. No. 02AP–604, 2003-Ohio-958, 2003 WL 723225, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 26 O.O.2d 366, 197 N.E.2d 548; *State v. Burke*, Franklin App. No. 02AP–1238, 2003-Ohio-2889, 2003 WL 21291042, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶ 100} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.

{¶ 101} We conclude that the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.

{¶ 102} Accordingly, appellant's second assignment of error is denied.

{¶ 103} For the foregoing reasons, the judgment of the Licking County Court of Common Pleas is affirmed.

Judgment affirmed.

FARMER, P.J., and WISE, J., concur.