[Cite as *State v. Griffin*, 2011-Ohio-3939.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25308 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| COCHISE J. GRIFFIN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2009 06 1966 |

DECISION AND JOURNAL ENTRY

Dated: August 10, 2011

CARR, Judge.

{¶1}    Appellant, Cochise Griffin, appeals the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}    This case stems from an incident in which shots were fired from a gold Ford Explorer, striking Jerome Tucker in the leg and back, during the early morning hours of June 21, 2009.  A police investigation led to the arrest of Griffin.  On July 8, 2009, Griffin was indicted on two counts of felonious assault in violation of R.C. 2903.11(A)(1)/(A)(2), a felony of the second degree, with firearm specifications pursuant to R.C. 2941.146; one count of attempted murder in violation of R.C. 2903.02(A) and 2923.02, a felony of the first degree, with a firearm specification pursuant to R.C. 2941.146; one count of attempted murder pursuant to R.C. 2903.02(B) and 2923.02, a felony of the first degree, with a firearm specification pursuant to R.C. 2941.146; and one count of having weapons while under disability in violation of

2923.13(A)(2)/(A)(3), a felony of the third degree. Griffin pled not guilty to all the charges. The State dismissed one of the felonious assault charges before trial.

{¶3}    The matter proceeded to trial before the jury. At the close of the State's case, the trial court denied Griffin's Crim.R. 29 motion for acquittal. Griffin did not put on a defense. The jury returned a verdict of guilty on the count of felonious assault, the count of attempted murder in violation of 2903.02(B)/2923.02, and both accompanying firearm specifications. The jury returned a verdict of not guilty on the other count of attempted murder and the having weapons while under disability charge. The trial court merged the felonious assault conviction into the attempted murder conviction.

{¶4}    Griffin filed a notice of appeal. He raises two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

"THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT APPELLANT'S CONVICTIONS."

**ASSIGNMENT OF ERROR II**

"APPELLANT'S CONVICTIONS WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶5}    Griffin argues that his convictions for felonious assault and attempted murder were not supported by sufficient evidence and were against the manifest weight of the evidence. This Court disagrees.

{¶6}    A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions

whether the state has met its burden of persuasion." Id., citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259, 279.

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.

{¶7} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶11. Rather,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

> "Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony. Id." *State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶5.

This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶8}   Griffin was charged with felonious assault in violation of R.C. 2903.11(A)(1)/(2), which states, in relevant part: "No person shall knowingly * * * [c]ause serious physical harm to another * * * [or][c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."  R.C. 2923.11(A) defines "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."  Firearms constitute deadly weapons.  R.C. 2923.11(B)(1).

{¶9}   R.C. 2901.01(A)(5)(b) and (c) define "serious physical harm to persons" to include "[a]ny physical harm that carries a substantial risk of death" or "involves some temporary, substantial incapacity[.]"  R.C. 2901.01(A)(3) defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶10}  Griffin was also charged with attempted murder in violation of R.C. 2903.02(B) and 2923.02.  The attempt statute provides: "No person, purposely or knowingly, and when purpose of knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."  R.C. 2923.02(A).

{¶11}  R.C. 2903.02(B) states: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 [voluntary manslaughter] or 2903.04 [involuntary manslaughter] of the Revised Code."

Sufficiency of the evidence

{¶12}  Griffin argues that there was insufficient evidence to establish that he fired the gun at the victim.

{¶13} The victim, Mr. Jerome Tucker, gave the following testimony. He had gotten in a fight with Griffin in early June over "differences" they had. During this fight, a man who was with Griffin took his truck. Although the police found his truck, he still had not recovered all of his personal items that were in it.

{¶14} Mr. Tucker further testified about what happened the night of June 20, 2009. He went to the 631 bar around 10:00 p.m. before going to the Waterback Lounge around midnight. At the Waterback, his friend Shawn Logan and Griffin got into a fight, which he helped break up. After the fight, Mr. Tucker went outside with Griffin and the two tried "ironing [their] differences out" before Griffin left. After Griffin left, the man who had previously stolen his truck showed up and they got in a fight. After the man took off running "behind somebody's house next to the Waterback[,]" Mr. Tucker proceeded to smash the windows of the man's green Saturn SUV. Mr. Tucker was walking back towards his truck when he was shot twice. The last thing he remembered was being put in a car.

{¶15} Mr. Tucker also testified about his injuries. He was shot in the leg and lower back and was in a coma for thirty days. He also had surgery because his "main artery was busted up real bad." At the time of trial, he still could not walk because his "leg's still pretty busted up."

{¶16} Ms. Angela Hatcher testified to the following events, which corroborated and elaborated upon Mr. Tucker's testimony. On the night of June 20, 2009, she went to the 631 before going to the Waterback. At the Waterback, Mr. Logan and Griffin got into a fight, which was quickly broken up. Griffin's girlfriend, later identified as Ms. Madeka Carey, got into a fight with other girls outside the bar as well. After the fights, Griffin and Ms. Carey got into "either [a] silver or gold Explorer" and left. A green SUV then drove up, driven by "Juju," who proceeded to get into a fight with Mr. Tucker. "Juju" disappeared behind a house. The victim

then broke the windows of "Juju's" truck. The Explorer Griffin left in then pulled up, "Juju" got in the backseat on the passenger side, and shots were fired from the vehicle, hitting Mr. Tucker. Ms. Hatcher and her two cousins put Mr. Tucker in a car after he was shot and drove him to the hospital.

{¶17} In reference to Griffin driving the gold Explorer he originally left in, Ms. Hatcher was asked, "After the shots rang out, it was this defendant that drove that vehicle away?" She responded, "Yes." Furthermore, when shown an exhibit of Ms. Carey's gold Explorer, Ms. Hatcher testified that it was the same vehicle she saw Griffin driving "when they came back."

{¶18} Ms. Kayla Ervin testified about what she witnessed at the Waterback in the early hours of June 21, 2009, which corroborated some of the other testimony. Mr. Logan and Griffin got in a fight that was broken up. Griffin and his girlfriend left the bar. She added that she "personally didn't like the look that was on his face" when he drove away. As Griffin slowly drove away, "he was eyeballing the crowd" before he suddenly "just tore out up the hill." Griffin's actions made her nervous and caused her to have concerns for Mr. Logan.

{¶19} Ms. Darsharee McMullen, who was also present at the 631 and the Waterback at the time of these incidents, testified that she did not drink that night. She also testified about Mr. Logan and Griffin fighting and Mr. Tucker intervening. She further testified that about five minutes after Griffin left the Waterback, "[a] truck pulled up, [Mr. Tucker] got shot, and the truck pulled off." The truck was coming towards her as it drove off. She told the police that Griffin was driving the truck. She thought the truck was a gold Explorer and testified that it was the same truck that Griffin had left in. She testified that the front two windows of the gold SUV were not tinted, but the back two windows were.

{¶20} Ms. Darrika McMullen, Darsharee's sister, testified about what she witnessed at the Waterback around 2:00 a.m. on June 21, 2009, which corroborated much of the other testimony about the fight between Griffin and Mr. Logan and Mr. Tucker breaking the windows of a green SUV. She added that Griffin drove away from the Waterback in a "real aggressive" manner that "scared all of us." She later "saw the truck pull back up, the same truck that [Griffin] left in, and * * * heard gunshots" and then the truck sped away. She identified Griffin as the driver of the truck, which she described as a gold SUV. She drove Mr. Tucker to the hospital after he was shot.

{¶21} Mr. Daryl Bowen, who lived near the scene of the shooting, testified about what he observed from his living room. In addition to recounting many of the same details as other witnesses, he testified that he observed a firearm appear out of the driver's side window of a gold SUV and fire multiple shots. The victim fell down and the SUV left the scene. He further explained that he had not been drinking and that "[y]ou can usually see [the street] pretty well" because of streetlights.

{¶22} Officer Warren Soulsby testified that he was called to the 631 for an "assault with injuries." He testified that he met with Ms. Carey, who told him that "she was assaulted at the Waterback Lounge" by Mr. Logan. He testified that Ms. Carey did not have a car when he located her and that he did not know how she arrived at that location. While he was driving Ms. Carey back to the crime scene, he learned that there had also been a possible shooting at the Waterback.

{¶23} Officer Karlton Starks testified that on the evening of June 22, 2009, he was responding to a call when he was flagged down by Mr. Julian DeBruce. He testified that Mr. DeBruce told him that his green Saturn Vue SUV had been vandalized in the backyard. He

testified that a gold Explorer was also parked in the driveway. He testified that he knew the police were on the lookout for a gold Explorer involved in the Waterback incident. He explained that the detective bureau had both of these SUV's towed and that the crime scene unit subsequently investigated them.

{¶24} Detective Jason Hill testified that he obtained search warrants for the two SUV's found at Mr. DeBruce's residence. He testified that the green Saturn SUV located at Mr. DeBruce's residence was the same SUV the victim had damaged outside the Waterback. He stated that Mr. DeBruce is also known as "Juju" and is Griffin's cousin. He testified that the investigation led to the determination that Mr. DeBruce was not involved in the shooting.

{¶25} At trial, as the "lead detective," Detective Hill described the procedure of the investigation. He testified that based on the information gathered during the investigation, the police identified Griffin as a suspect and Ms. Carey's gold Explorer as the vehicle he was thought to be driving. He testified that while there was no physical evidence connecting Griffin to the shooting, there was circumstantial evidence. He also testified that Griffin's occupation was "an auto detailer," which is a person who cleans cars.

{¶26} Mr. Andrew Chappell testified that he is a forensic scientist in the firearm section at the Ohio Bureau of Criminal Identification and Investigation. At trial, he described the characteristics and testing procedures for "fired ammunition components." He testified that a detective submitted three fired cartridge cases, a fired bullet, and a lead fragment, which were found at the scene of the shooting, for testing. He stated that testing proved that the three fired cartridge cases "were each fired from the same firearm."

{¶27} Mr. Chappell further testified that if a gun were fired from a vehicle, "[i]t is possible" that there would be gunshot residue somewhere on or inside the vehicle. However, he

added that gunshot residue can be "easily wiped off or removed" by environmental factors or cleaning.

{¶28} Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found the essential elements of the charges of felonious assault and attempted murder were proved beyond a reasonable doubt. See *Jenks* at paragraph two of the syllabus. While there was no direct physical evidence connecting Griffin to the shooting, there was ample circumstantial evidence in the form of eyewitness testimony. The State presented several eyewitnesses who saw Griffin leave the Waterback in a gold Explorer. Shots were fired from a gold Explorer and multiple eyewitnesses identified Griffin as the driver. Mr. Bowen testified that the driver's side window of this SUV went down and a firearm emerged from that window. The victim was shot twice and suffered serious physical harm. Accordingly, there was sufficient evidence to establish that Griffin committed a felonious assault with a firearm from a vehicle and attempted murder. Griffin's first assignment of error is overruled.

Manifest weight of the evidence

{¶29} Griffin challenges the credibility of the State's witnesses because most of them had been consuming alcohol that evening. He also points to evidence that he and Mr. Tucker had settled their differences prior to the shooting. He maintains that the only person with a motive to shoot Mr. Tucker was Mr. DeBruce, or "Juju," who was also seen in the gold SUV.

{¶30} Despite the shortcomings in the testimony of some of the State's witnesses, there were more consistencies in their testimony than there were inconsistencies on the critical details connecting Griffin to these crimes. Moreover, this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to

believe certain witness' testimony over the testimony of others. *State v. Crowe*, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, at ¶22.

{¶31} A thorough review of the record indicates that this is not the exceptional case, where the evidence weighs heavily in favor of Griffin, and there is no indication that the trial court lost its way and committed a manifest miscarriage of justice in convicting Griffin of felonious assault and attempted murder. The weight of the evidence supports the conclusion that Griffin fired a gun and shot the victim. The victim suffered serious physical harm as a result of two gunshot wounds. Several eyewitnesses described the vehicle that shots were fired from as a gold Explorer and stated it was the same or similar vehicle that Griffin had been driving when he left the Waterback. Furthermore, several eyewitnesses identified Griffin as the driver of the vehicle that shots were fired from and Mr. Bowen testified that the firearm appeared out of the driver's side front window. Ms. Hatcher testified that she saw Mr. DeBruce get in the backseat on the passenger side of the gold Explorer. Accordingly, Griffin's convictions for felonious assault and attempted murder were not against the manifest weight of the evidence. Griffin's second assignment of error is overruled.

III.

{¶32} Griffin's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.,
CONCUR

APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.