[Cite as *State v. Woolridge*, 2012-Ohio-3789.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    26196 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| YOREL J. WOOLRIDGE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 11 03 0641 |

DECISION AND JOURNAL ENTRY

Dated: August 22, 2012

MOORE, Judge.

{¶1} Appellant, Yorel Woolridge, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Akron police officer, James Givens, responded to a call about a fight at the Late Nite Cabaret, a local gentleman's club. When Officer Givens arrived on scene, Daleone Peoples was being treated by EMS for a large, deep cut to his face. Peoples was transported to the hospital where he was admitted. He spent two days in the hospital receiving treatment and a plastic surgeon was consulted because of concerns of nerve damage.

{¶3} Ms. Woolridge and Peoples agree that Peoples' injury was caused by Ms. Woolridge striking him in the face with a glass bottle or water glass. They disagree, however, about the events before and after the assault.

{¶4} According to Peoples, he arrived at the Cabaret and made his usual rounds to say hello to friends. He testified that while he was talking to one of the dancers, Ms. Woolridge approached him from behind and told him to "leave [her] girl alone." Peoples stated that he knew the dancer and her girlfriend, but did not know Ms. Woolridge so he just ignored her. She became angry and the two became involved in a shoving match. All of a sudden, according to Peoples, Ms. Woolridge hit him in the head with a glass bottle and the fighting stopped because he realized he was bleeding badly. Peoples then went to the bathroom to assess his injuries. Peoples testified that when he got to the bathroom he saw "[t]he side of [his] face hanging off[.]" Peoples further testified that as he left the bathroom and proceeded towards the front door to wait outside for the ambulance, Ms. Woolridge stood in his way and acted "as though she wanted to do some more." Peoples admits to punching her and continuing outside.

{¶5} According to Ms. Woolridge, Peoples was drunk when he arrived at the bar. Ms. Woolridge said Peoples approached her and grabbed her buttocks. She responded by telling Peoples "excuse you" to which he replied that he could have her if he wanted, and if she said anything else smart, he'd "mess" with her. Ms. Woolridge testified that she pushed him away and then he hit her. She said that when Peoples hit her she instinctively swung at him, hitting him in the face with a water glass that she had been holding. She testified that after she hit him with the glass, they continued to fight, and, at some point, both of them ended up on the floor. She did not notice that Peoples was bleeding during the fight. According to Ms. Woolridge, the fight lasted about six minutes and ended when some patrons stepped in and held Peoples back. Ms. Woolridge said that she then went and hid in a side room to wait for the police.

**{¶6}** Ms. Woolridge was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(1)/(A)(2) and convicted after a jury trial. She was sentenced to four years in prison. Ms. Woolridge now appeals and presents two assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT [MS. WOOLRIDGE'S] CONVICTION FOR FELONIOUS ASSAULT.

**{¶7}** In her first assignment of error, Ms. Woolridge argues that there was insufficient evidence to support her conviction for felonious assault under R.C. 2903.11(A)(1) or (A)(2). We disagree.

**{¶8}** "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

**{¶9}** "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. McCoy*, 9th Dist. No. 25584, 2011-Ohio-6592, ¶ 6.

{¶10} R.C. 2903.11(A)(1) prohibits, in part, any person from knowingly causing serious physical harm to another. Ms. Woolridge argues the evidence presented fails to show Peoples' injury amounted to serious physical harm. R.C. 2901.01(A)(5) defines serious physical harm to a person as any one of the following:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

> (b) Any physical harm that carries a substantial risk of death;

> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶11} Ms. Woolridge argues that the evidence presented was insufficient to establish that Peoples' facial scar was permanent or that the physical harm involved "acute pain of such duration as to result in substantial suffering." *See* R.C. 2901.01(A)(5)(d) & (e).

{¶12} Peoples testified that when he went to the bathroom to assess his injury, he saw "[t]he side of [his] face hanging off[.]" Cynthia Johnson, the bartender at the Late Nite Cabaret, testified that she saw Ms. Woolridge hit Peoples, "[a]nd then he turned around and looked at [her], and his face was just sliced open. So [she] ran down to the bar and [] got him a towel." Peoples was treated at the scene by EMS and transported to the hospital where he was admitted. The hospital records indicate that Peoples had a deep, four-inch long facial laceration that required a consultation with a plastic surgeon because of concerns of nerve damage. Peoples remained hospitalized for two days; thereafter he was given a prescription to manage his pain. He continued on the pain medication for a week, followed by a week of over-the-counter pain relievers. Peoples testified his facial scar was permanent and that he had follow-up appointments

scheduled with a plastic surgeon to attempt to minimize the scar. The State also admitted photographs of the injury, showing a deep, four-inch long gash across Peoples' face.

{¶13} The State was not required to show that Peoples' facial scar was permanent or that the physical harm involved "acute pain of such duration as to result in substantial suffering." The jury was entitled to find serious physical harm based on "some temporary, serious disfigurement." R.C. 2901.01(A)(5)(d). After reviewing the evidence in a light most favorable to the State, we conclude there is sufficient evidence to support a finding of serious physical harm.

{¶14} Because we have concluded that the State has presented sufficient evidence of serious physical harm, we decline to address Ms. Woolridge's arguments that the State failed to present sufficient evidence of a deadly weapon to support a conviction under R.C. 2903.11(A)(2). Her first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

[MS. WOOLRIDGE'S] CONVICTION FOR FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

{¶15} In her second assignment of error, Ms. Woolridge argues that her conviction is against the manifest weight of the evidence. We disagree.

{¶16} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *Thompkins* at 387; *Eastley v. Volkman*, Slip Opinion No. 2012-Ohio-2179, ¶ 12. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins* at 387, quoting *Black's* at 1594.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence

and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387.

{¶17} Ms. Woolridge argues that the weight of the evidence supports a finding that she acted in self-defense when she struck Peoples. Peoples and Ms. Woolridge were the only two witnesses at trial that testified they saw how the incident started. Not surprisingly, they gave very different accounts of that evening's events. Peoples testified that Ms. Woolridge became aggressive with him when he was talking to one of the female dancers, and admitted that he engaged in a shoving match with her before she struck him in the face. However, Peoples also testified that she was the initial aggressor, and, although he did shove her, he did not punch her until she stood in his way when he was trying to leave to wait for the ambulance. Peoples further testified that he was not impeding Ms. Woolridge's access to the nearest exit.

{¶18} Ms. Woolridge testified that Peoples was the initial aggressor, when he grabbed her buttocks. She said that after she pushed Peoples away from her, he hit her. She then instinctively swung and hit him with the water glass that she had been holding. Ms. Woolridge said Peoples continued to punch her and the fight only stopped when patrons held Peoples back. She then ran and hid in a side room and waited for the police.

{¶19} Johnson, the bartender at the Cabaret, testified that while she was making drinks she heard some yelling behind her. She turned to see Peoples and Ms. Woolridge standing close to one another, arguing. Johnson went around the bar to see what was going on. Johnson said

that as she approached, she saw Ms. Woolridge strike Peoples in the face and heard a glass break. Peoples then turned around and looked at Johnson and "his face was just sliced open." Johnson testified that she ran back to the bar and grabbed a towel for his face. She then told Peoples to go to the bathroom. After Peoples came out of the bathroom, she saw Ms. Woolridge and Peoples fighting again by the front door. Johnson said she saw Peoples punch Ms. Woolridge in the face and then walk outside.

{¶20} An appellate court must give deference to the jury's evaluation of the evidence and credibility of witnesses. *State v. Ali*, 9th Dist. No. 18841, 1998 WL 597654, * 5 (Sept. 9, 1998). The jury was entitled to believe all, part, or none of the testimony of each witness. *Prince v. Jordan,* 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. *See also State v. Frazier*, 9th Dist. No. 25654, 2012-Ohio-790, ¶ 57. An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *State v. Griffin*, 9th Dist. No. 25308, 2011-Ohio-3939, ¶ 7.

{¶21} In reaching its decision to convict Ms. Woolridge, the jury chose not to believe she acted in self-defense. The jury was entitled to believe Peoples' version of the events over that of Ms. Woolridge. "We will not overturn the verdict on a manifest weight challenge simply because the jury chose to believe the evidence offered by the prosecution." *State v. Morgan*, 9th Dist. No. 22848, 2006-Ohio-3921, ¶ 35. After reviewing the record, we cannot conclude that the

jury, in resolving conflicting testimony, clearly lost its way and created a manifest miscarriage of justice. Ms. Woolridge's second assignment of error is overruled.

## III.

{¶22} Ms. Woolridge's assignments of error are overruled and the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
BELFANCE, J.
CONCUR.

APPEARANCES:

NICHOLAS J. HORRIGAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.