[Cite as *State v. Abraham*, 2012-Ohio-4248.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26258 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| NADEEM ABRAHAM | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 10 2957 |

DECISION AND JOURNAL ENTRY

Dated: September 19, 2012

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, Nadeem Abraham, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} Shortly after Easter in 2010, I.D. reported to her teacher that her grandfather, Abraham, had sexually abused her. The school contacted I.D.'s mother and an investigation ensued. According to I.D., Abraham had touched her genitals with his hands and mouth multiple times over the course of several years. The police spoke with Abraham and, in the course of their investigation, decided to search the desktop computer from his home. A forensic analysis of the computer uncovered images that appeared to depict two minors engaging in sexual activity and another naked minor.

{¶3} A grand jury indicted Abraham on the following counts: (1) rape, in violation of R.C. 2907.02(A)(1)(b); (2) two counts of gross sexual imposition, in violation of R.C.

2907.05(A)(4); (3) illegal use of a minor in a nudity-oriented material or performance, in violation of R.C. 2907.323(A)(3); (4) pandering obscenity involving a minor, in violation of R.C. 2907.321(A)(5); and (5) pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322(A)(5). The State later dismissed one count of gross sexual imposition and the count for pandering obscenity, leaving the remaining four counts for trial.

{¶4} Abraham filed a motion to sever the rape and gross sexual imposition counts from the other two counts, arguing that the two sets of counts were unrelated and that their joinder would cause him undue prejudice. The trial court denied his motion to sever, and the matter proceeded to a jury trial. At the conclusion of the trial, the jury found Abraham guilty on all four counts. Abraham filed a motion for new trial on the basis that the State used his pre-arrest silence during the trial to infer his guilt, but the trial court denied Abraham's motion. The court sentenced Abraham to fifteen years to life in prison and classified him as a Tier III sexual offender.

{¶5} Abraham now appeals from his convictions and raises five assignments of error for our review. For ease of analysis, we rearrange several of the assignments of error.

II

Assignment of Error Number Five

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING DEFENDANT'S MOTION FOR SEVERANCE OF THE GROSS SEXUAL IMPOSITION AND RAPE COUNTS FROM THE OTHER COUNTS IN THE INDICTMENT AS TRIED HEREIN, IN VIOLATION OF DEFENDANT'S RIGHTS AS GUARANTEED TO HIM BY THE DUE PROCESS PROVISION OF SECTION I OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, AND THE DUE PROCESS PROVISION OF O. CONST. § 16.

{¶6} In his fifth assignment of error, Abraham argues that the trial court erred by denying his motion to sever certain counts in his indictment. Specifically, he argues that the

court should have severed his trial on the rape and gross sexual imposition counts from the counts for the illegal use of a minor in a nudity-oriented material or performance and pandering sexually oriented matter involving a minor. We disagree.

{¶7} Initially, we must consider whether Abraham forfeited his challenge to the trial court's ruling on his motion to sever. "It is well-settled that the law favors joinder." *State v. Merriweather*, 9th Dist. No. 97CA006693, 1998 WL 239773, *3 (May 6, 1998). Crim.R. 8 governs the joinder of multiple offenses in a single indictment while Crim.R. 14 governs the joinder of offenses, whether in a single or separate indictment(s), for trial. *State v. Hatfield*, 9th Dist. No. 23716, 2008-Ohio-2431, ¶ 14. If a defendant seeks to challenge his indictment pursuant to Crim.R. 8 on the basis that multiple counts should not have been joined in a single indictment, he need not renew a motion to sever. *Id.* at ¶ 14-15. "To preserve a claimed error under Crim.R. 14, however, a defendant must renew his * * * motion to sever either at the close of the State's case or at the conclusion of all of the evidence." *State v. Miller*, 9th Dist. Nos. 10CA009922 & 10CA009915, 2012-Ohio-1263, ¶ 17. A renewal of the motion is necessary because, unlike a Crim.R. 8 analysis, a Crim.R. 14 analysis examines any prejudice resulting from the joinder in light of the evidence introduced at trial. *See Hatfield* at ¶ 14-15, citing *United States v. Terry*, 911 F.2d 272, 277-278 (9th Cir.1990). A defendant's failure to renew his Crim.R. 14 motion "results in a forfeiture of the issue on appeal." *State v. Vu*, 9th Dist. No. 11CA0042-M, 2012-Ohio-746, ¶ 37.

{¶8} In his motion to sever, Abraham wrote the following: "Pursuant to Criminal Rule 14, relating to relief from prejudicial joinder, Defendant moves the Court for severance, *for trial purposes herein*, of Counts 1 and 2 from Counts 3 and 4." (Emphasis added.) Moreover, in his request for relief at the conclusion of his motion, Abraham requested "that the Court *order*

*separate trials* for the first two counts from the last two counts of the indictment * * *." (Emphasis added.) A motion that only requests counts to be tried separately falls squarely within the purview of Crim.R. 14. *Hatfield* at ¶ 15. Abraham was required, therefore, to renew his motion to sever either at the close of the State's case or at the end of trial. *Miller* at ¶ 17. The record reflects that Abraham never renewed his motion after the trial commenced. As such, he forfeited his motion to sever. *Vu* at ¶ 37.

{¶9} Although Abraham forfeited his motion to sever, he argues in the alternative that the trial court's denial of his motion amounted to plain error. Because forfeiture does not foreclose a claim of plain error, we analyze Abraham's alternative argument. *See Miller* at ¶ 18. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. "A defendant claiming error * * * under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced * * *." *State v. Patel*, 9th Dist. No. 24024, 2008-Ohio-4692, ¶ 52, quoting *State v. Torres*, 66 Ohio St.2d 340 (1981), syllabus. "Only an actual injustice, and not merely a risk of injustice, is sufficient." *State v. Groce Hopson*, 9th Dist. No. 03CA008377, 2004-Ohio-2949, ¶ 13.

{¶10} Two of the charges against Abraham arose as a result of the sexual abuse allegations brought to light by his granddaughter, and the remaining two charges arose from pornographic images taken from his computer. Abraham argues that the court should have severed the two sets of counts because there was no evidence that he used the computer in connection with the offenses against his granddaughter or that any of the images on his computer

were of her. "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992).

{¶11} Abraham fails to analyze either of the factors set forth in *Schaim*. The State only searched Abraham's computer as a result of the allegations brought to light by his granddaughter. *See State v. Wigle*, 9th Dist. No. 25593, 2011-Ohio-6239, ¶ 23 (joinder appropriate, in part, because one charge occurred while officers were investigating the other charge). There also was testimony that the pornographic images investigators uncovered on the computer were, in fact, children. Abraham makes no attempt to explain why evidence that his computer contained child pornography would be inadmissible in his trial for sexually abusing a child victim. *See State v. Zoubaier*, 9th Dist. No. 26049, 2012-Ohio-2888, ¶ 12; App.R. 16(A)(7). Further, he makes no attempt to analyze whether the evidence with regard to each set of charges was simple and distinct. *Zoubaier* at ¶ 12-13; App.R. 16(A)(7). He only argues that the court erred by allowing the joinder of the counts for trial because the admission of pornographic images during a sexual abuse trial has a prejudicial effect. Yet, evidence is not inadmissible per se simply because it is prejudicial in nature. Moreover, "[w]here the evidence of each of the joined offenses would be admissible at separate trials, severance is not required because prejudice due to the * * * inference of a criminal disposition is largely absent." *State v. Hamblin*, 37 Ohio St.3d 153, 159 (1988).

{¶12} This Court will not undertake an analysis of the *Schaim* factors on behalf of Abraham when he has not done so. As this Court has repeatedly held, "[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v.*

*Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *8 (May 6, 1998). Abraham has not shown that the trial court committed plain error by denying his motion to sever. Consequently, his fifth assignment of error is overruled.

Assignment of Error Number Four

> THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING DEFENDANT'S MOTIONS FOR ACQUITTAL WHICH WERE MADE AT THE CLOSE OF THE STATE'S EVIDENCE AND THE CLOSE OF ALL EVIDENCE, SINCE THE EVIDENCE IN THIS CASE IS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION; ACCORDINGLY, DEFENDANT'S CONVICTION WAS IN DENIAL OF HIS RIGHT TO DUE PROCESS, AS GUARANTEED TO HIM BY SECTION I OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, AND THE DUE PROCESS PROVISION OF O. CONST. § 16.

{¶13} In his fourth assignment of error, Abraham argues that his convictions are based on insufficient evidence, and that the trial court erred by denying his motion for acquittal. We disagree.

{¶14} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins*, 78 Ohio St.3d at 386.

{¶15} While Abraham requests that this Court review the evidence for all of his offenses, his sufficiency argument focuses exclusively on his convictions for the illegal use of a

minor in a nudity-oriented material or performance and pandering sexually oriented matter involving a minor. He does not offer any argument as to why his convictions for rape or gross sexual imposition are based on insufficient evidence. *See* App.R. 16(A)(7). I.D., who was ten years old at the time of trial, testified at trial and described multiple instances in which Abraham removed her clothing from the waist down and either touched her genitals with his hands or performed oral sex on her. *See* R.C. 2907.02(A)(1)(b) (rape defined as sexual conduct with a person less than thirteen years of age); R.C. 2907.05(A)(4) (gross sexual imposition defined as sexual contact with a person less than thirteen years of age). "[I]n sex offense cases, * * * the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration." *State v. Melendez*, 9th Dist. No. 08CA009477, 2009-Ohio-4425, ¶ 15, quoting *State v. Willard*, 9th Dist. No. 05CA0096-M, 2006-Ohio-5071, ¶ 11. This Court will not inquire further into the sufficiency of Abraham's rape and gross sexual imposition convictions when he has not done so. App.R. 16(A)(7); *Cardone*, 1998 WL 224934, at *8. Consequently, we confine the remainder of our analysis to his remaining two convictions.

{¶16} "No person shall * * * [p]ossess or view any material or performance that shows a minor who is not the person's child * * * in a state of nudity * * *." R.C. 2907.323(A)(3). The nudity depicted must constitute a "lewd exhibition or involve[] a graphic focus on the genitals." *State v. Young*, 37 Ohio St.3d 249 (1988), paragraph one of the syllabus. "Because R.C. 2907.323 does not specify any degree of culpability, the degree of culpability required to commit the offense is recklessness." *State v. Tooley*, 114 Ohio St.3d 366, 2007-Ohio-3698, ¶ 37.

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

R.C. 2901.22(C). An image that appears on a computer monitor constitutes "material" for purposes of R.C. Chapter 2907. R.C. 2907.01(J). The term "minor" means "a person under the age of eighteen." R.C. 2907.01(M). Whoever commits the foregoing offense is guilty of the illegal use of a minor in a nudity-oriented material or performance. R.C. 2907.323(B).

{¶17} "No person, with knowledge of the character of the material or performance involved, shall * * * [k]nowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor participating or engaging in sexual activity * * *." R.C. 2907.322(A)(5). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). The phrase "sexual activity" includes both sexual conduct and sexual contact, as defined by R.C. 2907.01. R.C. 2907.01(C). Whoever commits the foregoing offense is guilty of pandering sexually oriented matter involving a minor. R.C. 2907.322(C).

{¶18} Detective Rinear seized the desktop computer from Abraham's home with his consent and delivered it to the Summit County Sheriff's Department for forensic analysis. Detective Daniel Sladek, a forensic specialist in computers, analyzed the computer's hard drive and uncovered the two particular images that resulted in Abraham's charges. The first image, State's Exhibit 7, was a JPEG file for which Detective Sladek was able to find a creation and access date of March 26, 2010. He also was able to find a modify date of April 3, 2010, meaning that the image could have been copied from another place or modified in some manner on that date. Detective Sladek opined within a reasonable degree of scientific certainty that the image most likely appeared on the computer's screen and then was saved in a temporary internet file. Detective Sladek was unable to be more definitive in his conclusion because he could not

eliminate the possibility that Exhibit 7 could have been stored on the computer's hard drive without ever appearing on the screen. Even so, he testified that doing so would have required the manual copying of the image to the computer via an external media source, such as a CD or a thumb drive.

{¶19} The second image Detective Sladek found, State's Exhibit 8, was also a JPEG file, but did not have a creation, access, or modification date. Detective Sladek located the image in the hard drive's unallocated space, which he described as the space in which a computer stores deleted items until those items are overwritten by other data. Because Detective Sladek only found Exhibit 8 in the computer's unallocated space, it was not possible for him to determine how the image might have gotten on the computer. He did testify, however, that Abraham had a particular user account on the computer and that the last account that had been accessed at the time the police confiscated the computer was Abraham's.

{¶20} The State presented the two images taken from Abraham's computer to the jury. Exhibit 7 depicts a small female in a seated position bending over the lap of another individual, who appears to be a pre-adolescent male. The male, who is seated next to the female, has his arm draped over the female's back while his hand cups her chest and pulls her closer. Much of the female's hair covers her face in the picture, but she appears to be performing fellatio on the male. Exhibit 8 depicts a lone female sitting in a bathtub filled with bubbles. The female is naked in the image, although the bubbles in the bathtub and her left hand obscure her genital area. In the image, the female looks straight to camera with pursed lips and blows bubbles from a small bubble wand that she holds with her right hand. The female's chest is clearly visible in the image.

{¶21} Dr. Richard Daryl Steiner testified that he is the medical director of the CARE Center at Akron Children's Hospital. Dr. Steiner viewed Exhibits 7 and 8 on the State's behalf in order to offer his opinion as to the age of the three individuals depicted in the images. In forming an opinion, Dr. Steiner considered several factors such as the body proportions of the individuals and their sexual development. Dr. Steiner explained that criteria exist for body proportion ratios such that one can compare the proportions of the head to the torso and the torso to the extremities. In assessing the body proportions of an individual depicted in an image, Dr. Steiner testified that he also assesses the individual for signs of any congenital abnormalities that might result in irregular proportions. As to sexual development, Dr. Steiner stated that he relies upon the Tanner stages of development, a recognized method for categorizing individuals into five stages of sexual development with Stage 1 representing a child without any sexual development and Stage 5 representing a fully developed adult. Dr. Steiner opined that all three of the individuals depicted in Exhibits 7 and 8 were under the age of eighteen. Specifically, he determined that the female depicted in Exhibit 7 was less than ten years old, the male depicted in Exhibit 7 was approximately ten to fifteen years old, and the female depicted in Exhibit 8 was less than ten years old.

{¶22} Abraham testified at trial and admitted that he had used the desktop computer from his home to view pornography. *See Jenks*, 61 Ohio St.3d at paragraph two of the syllabus (sufficiency analysis examines all of the evidence admitted at trial). He also admitted that it was possible that he had viewed Exhibits 7 and 8 on the computer before, but stated that he could not remember one way or another because the images were not memorable to him.

{¶23} Viewing all of the evidence in a light most favorable to the prosecution, a rational trier of fact could have determined that the State proved the elements of Abraham's convictions

beyond a reasonable doubt. Dr. Steiner testified that Exhibit 7 portrays two minors engaging in oral sex while Exhibit 8 portrays a naked minor in a suggestive pose. Having viewed the images in conjunction with Dr. Steiner's testimony, we conclude that the State presented sufficient evidence that Exhibits 7 and 8 depicted minors, two of whom were engaging in sexual activity and one of whom was in a state of nudity that constituted a lewd exhibition. *See State v. Casto*, 9th Dist. No. 2977-M, 2000 WL 1288187, *4 (Sept. 13, 2000), quoting *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals*, 63 Ohio St.3d 354, 358 (1992) ("The term 'lewd' has been defined as 'sexually unchaste or licentious * * * lascivious * * * inciting to sensual desire or imagination * * *.'"). We further conclude that the State presented sufficient evidence that Abraham knowingly possessed or controlled Exhibit 7 and recklessly possessed Exhibit 8. There was testimony that both images were found on his computer. Exhibit 7 had a creation, access, and modification date, and Exhibit 8 had been deleted at some point, thereby sending it to the hard drive's unallocated space. Abraham himself admitted that he had used the computer to view pornography and that it was possible he had viewed Exhibits 7 and 8. Viewing the evidence in a light most favorable to the State, we conclude that the State presented sufficient evidence to support Abraham's convictions. As such, his fourth assignment of error is overruled.

Assignment of Error Number Three

> DEFENDANT-APPELLANT'S CONVICTION IN THIS CASE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE REVERSED, AS IN VIOLATION OF DEFENDANT'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND O. CONST. ART. I, § 16.

**{¶24}** In his third assignment of error, Abraham argues that his convictions are against the manifest weight of the evidence. We disagree.

{¶25} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten*, 33 Ohio App.3d at 340.

**Rape and Gross Sexual Imposition**

{¶26} I.D. was ten years old at the time of trial and testified that Abraham had sexually abused her multiple times over the years. All of the witnesses who testified at trial agreed that I.D., her younger brother, and her older sister, routinely visited her grandparents' house once a week or more and often spent the night there before I.D. disclosed that she had been sexually abused. I.D. stated that Abraham would take her into either the garage or the computer room of his house before removing her clothing from the waist down. Abraham would then either touch I.D. on her "front private part" with his hands or perform oral sex on her. I.D. specified that Abraham touched her on the part of the body that "[y]ou urinate from" and that it was uncomfortable, "felt weird," and sometimes it hurt afterwards. According to I.D., when her

grandfather was touching her he "asked [her] if [she] liked it," but she would just look up and not say anything. I.D. indicated that she decided to tell her teacher at school about the abuse after she watched the sexual abuse program that the school guidance counselor presented.

{¶27} After I.D. reported that she had been abused, she met with a social worker from Summit County Children Services, had an interview with a social worker from the CARE Center at Akron Children's Hospital, and underwent a physical examination. Kelly Lynn Aloisi conducted I.D.'s preliminary interview at her father's home and described I.D. as sad, embarrassed, and frightened. Although I.D.'s later physical examination was normal, Donna Abbott, the nurse practitioner who conducted the exam, testified that the normal results of I.D.'s exam were not inconsistent with the form of abuse she had reported. Nurse Abbott also testified that it is not unusual for victims of abuse to wait a substantial period of time before reporting the abuse. Much like her testimony at trial, in her interview with Cathy Beckwith-Laube at the CARE Center, I.D. described multiple occasions where Abraham sexually abused her with either his hands or his mouth.

{¶28} Marie Abraham, Abraham's wife, described I.D. as a child who was always seeking attention and competing with her siblings for her grandfather's affection. Marie testified that when her three grandchildren visited, I.D. and her brother were inseparable and that she could not recall a single time in the course of the nearly two-year period covered by the indictment that Abraham was alone in the home with I.D. Marie also testified that I.D.'s attitude towards her grandparents had changed since her parents had separated and that she would ask her grandfather why he did not like her father. Even so, after she and her husband learned of I.D.'s allegations and spoke to one another, Marie testified that Abraham thought perhaps I.D. was "probably mad at [him] because [he] was angry with the way she[ had been] keeping her room."

14

Marie also admitted that she mostly stayed with I.D.'s older sister on one level of the house to help care for her when the children came over.

{¶29} Abraham testified in his own defense and denied ever abusing I.D. Abraham stated that he mostly took part in fun activities with his grandchildren when they visited and that his wife mainly assumed the caretaking role. Abraham stated that he had always disapproved of his daughter's relationship with I.D.'s father and that I.D. would ask him questions about why he hated her father. Abraham agreed with his wife's assessment that I.D. and her brother were competitive with one another and that it was difficult to be with one without the other also being there. Abraham admitted, however, that he was able to keep from his wife the fact that he had used the desktop computer in the home office to view pornography. Abraham stated that he would view the pornography when his wife was upstairs in a different part of the house. As previously discussed, when the police searched Abraham's computer, they found images of child pornography.

{¶30} I.D.'s mother, Deanne, also testified. Deanne admitted that her former husband and Abraham had never gotten along, but also testified that she had divorced her husband a little over four years before the trial. She also testified that, while her oldest daughter required a great deal of care due to the fact that she suffered from Rett Syndrome, she had suffered from the condition since a very early age and I.D. loved her sister and enjoyed helping her. Deanne testified that after I.D. told her about the abuse she regularly took I.D. to a psychologist over the course of a year so that she could receive therapy to address the abuse.

{¶31} Because there was no physical evidence of abuse, the jury in this matter essentially reached a decision based on credibility. A jury is "entitled to believe all, part, or none of the testimony of each witness," and "[a]n appellate court must give deference to the jury's

evaluation of the evidence and credibility of witnesses." *State v. Woolridge*, 9th Dist. No. 26196, 2012-Ohio-3789, ¶ 20. Based on our review of the record, we cannot conclude that this is the exceptional case where the jury lost its way by convicting Abraham of rape and gross sexual imposition. The jury chose to believe I.D.'s version of the events and rejected the theory that she fabricated these allegations and endured interviews, examinations, trial, and over a year of therapy either because she was angry at her grandfather or desired attention from her family. "We will not overturn the verdict on a manifest weight challenge simply because the jury chose to believe the evidence offered by the prosecution." *State v. Morgan*, 9th Dist. No. 22848, 2006-Ohio-3921, ¶ 35. Consequently, we reject Abraham's argument that his rape and gross sexual imposition convictions are against the manifest weight of the evidence.

**Illegal Use of a Minor and Pandering Sexually Oriented Material**

{¶32} This Court previously described the evidence the State set forth in support of Abraham's remaining convictions in his sufficiency assignment of error. In its case-in-chief, the defense presented the testimony of Dr. Steven Michael Klein, a gynecologist. Dr. Klein also viewed Exhibits 7 and 8 and opined that he could not determine or estimate the ages of any of the individuals depicted in those images. Dr. Klein testified that it is notoriously difficult to estimate chronological age and methods for doing so are not exact because people develop at different rates. Dr. Klein would only testify that the individuals depicted in Exhibits 7 and 8 appeared "to be biologically not as far advanced as other[s] * * * on the Bell-shaped curve of pubescence * * *."

{¶33} Having viewed Exhibits 7 and 8 and listened to Dr. Steiner's testimony, the jury could have rejected Dr. Klein's opinion and believed that the exhibits depicted minors. Jurors are not obligated to believe an expert merely because the person is one. *Waugh v. Chakonas*, 9th

Dist. Nos. 25417 & 25480, 2011-Ohio-2764, ¶ 23. Moreover, the jurors could have believed that Abraham knowingly possessed or controlled Exhibit 7 and recklessly possessed Exhibit 8. Abraham admitted that he used the desktop computer to view pornography and that it was possible that he had viewed Exhibits 7 and 8. He claimed, however, that he did not remember whether he had viewed the images because they were not memorable. Viewing the two images themselves, the jury could have chosen to believe that Abraham's assertion that he would not have remembered seeing two disturbing images of child pornography was not believable. In any event, we cannot conclude that this is the exceptional case where the jury lost its way. Abraham's convictions for the illegal use of a minor in a nudity-oriented material or performance and pandering sexually oriented matter involving a minor are not against the manifest weight of the evidence. Consequently, his third assignment of error is overruled.

Assignment of Error Number Two

> THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ALLOWING OVER DEFENDANT-APPELLANT'S REPEATED OBJECTION, THE STATE TO INTRODUCE TESTIMONY FROM A STATE'S WITNESS, CATHY LEIGHTON, AS TO THE NUMBER OF CHILDREN WHO HAVE WATCHED A VIDEO ON CHILD SEXUAL ABUSE WHO HAD SUBSEQUENTLY REPORTED ANY SUCH ABUSE.

{¶34} In his second assignment of error, Abraham argues that the trial court abused its discretion by admitting the testimony of Cathy Resick Leighton because it was irrelevant and impermissibly prejudicial. We disagree.

{¶35} A trial court has broad discretion in admitting evidence, and this Court will not overturn its decision on appeal absent an abuse of discretion that materially prejudices a defendant. *State v. Wade*, 9th Dist. No. 02CA0076, 2003-Ohio-2351, ¶ 8, quoting *State v. Long*, 53 Ohio St.2d 91, 98 (1978). *Accord State v. Allen*, 73 Ohio St.3d 626, 633 (1995). An abuse of

discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶36} Cathy Resick Leighton testified that she is an elementary school counselor for the Hudson City School District. Part of Leighton's job each year is to present a grade-level appropriate sexual abuse program at the school. Leighton chose to show a video to I.D.'s class as part of her program. Leighton described the video as a story about a girl who decides to tell her mother that her uncle has been touching her after a series of events. Leighton testified that, after the video, she then discusses the story with the kids to talk about whether the girl in the video had been sexually abused and whether she did the right thing by telling her mother. Leighton testified that since she had developed the particular sexual abuse program she presented to I.D.'s class she had presented it to approximately 960 students. She then stated that only one child other than I.D. had ever reported abuse to her after viewing the material. Abraham objected to Leighton's last response on the basis of relevance. The trial court overruled his objection, noting that the testimony was "marginally relevant."

{¶37} Abraham argues that the trial court abused its discretion by admitting Leighton's testimony that only I.D. and one other student out of approximately 960 students had reported sexual abuse after watching her program. He argues that the testimony was irrelevant and overly prejudicial. Yet, the record reflects that Abraham only objected to Leighton's testimony on the basis of relevance. He did not object on the basis that the testimony was prejudicial. *See* Evid.R. 403(A) ("Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."). "A defendant forfeits appellate review of an alleged error at trial if [he] fails to contemporaneously object to that error at trial." *State v. McCallum*, 9th Dist. No. 08CA0037-M,

2009-Ohio-1424, ¶ 19, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 23; Crim.R. 52(B). Moreover, while a litigant who forfeits an objection below may argue plain error on appeal, Abraham has not done so. "Because [Abraham] forfeited [his] Evid.R. 403 argument by failing to object on that basis at trial and does not argue plain error on appeal, we will not address [his] Evid.R. 403 argument." *McCallum* at ¶ 19. "Instead, we confine our analysis to [his] relevancy argument." *State v. Maple*, 9th Dist. No. 25313, 2011-Ohio-1216, ¶ 12.

**{¶38}** "'Relevant evidence' means evidence having *any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Emphasis added.) Evid.R. 401. Part of the defense's theory in this case was that I.D. fabricated the allegations of abuse against Abraham either because she blamed him for her father's absence or to gain some degree of attention for herself given the great deal of attention devoted to her sister's disease. Leighton testified that it was exceedingly uncommon for the children who participated in her program to report abuse after the fact. Her testimony, therefore, detracted from any suggestion that I.D. was inspired to fabricate the allegations against her grandfather as a result of the sexual abuse program and bolstered I.D.'s credibility.

**{¶39}** The burden imposed by Evid.R. 401 is not an onerous one. Evidence will be admissible under the rule so long as it has "any tendency" to make a fact of consequence more or less probable. "[I.D.'s] credibility was of consequence to the charge." *State v. Moore*, 40 Ohio St.3d 63, 65 (1988). Because the evidence had some tendency to make I.D. appear more credible, we cannot conclude that the trial court abused its discretion by allowing it. *See id.* Abraham's second assignment of error is overruled.

Assignment of Error Number One

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING DEFENDANT-APPELLANT'S MOTION FOR MISTRIAL AND SUBSEQUENT MOTION FOR NEW TRIAL RELATING TO THIS ISSUE WHICH WERE MADE FOLLOWING THE REMARKS, DURING REDIRECT EXAMINATION, OF A STATE'S WITNESS, DETECTIVE LINDA RINEAR, TO THE EFFECT THAT DEFENDANT-APPELLANT MIGHT WISH TO SPEAK WITH AN ATTORNEY PRIOR TO SIGNING A CONSENT TO SEARCH HIS PERSONAL COMPUTER, IN VIOLATION OF DEFENDANT'S RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶40} In his first assignment of error, Abraham argues that the trial court erred by denying his motion for a mistrial after the State relied upon his pre-arrest silence as evidence of his guilt in its case-in-chief. We disagree.

{¶41} "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "The essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely affected. Great deference is afforded to a trial court's decision regarding a motion for mistrial. Accordingly, this Court reviews the denial of a motion for mistrial for an abuse of discretion." (Internal citations, alterations, and quotations omitted.) *State v. Howes*, 9th Dist. No. 24665, 2010-Ohio-421, ¶ 11. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore*, 5 Ohio St.3d at 219.

{¶42} "A suspect's right to an attorney during questioning * * * is derivative of his right to remain silent * * *." *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, ¶ 13, quoting *Wainwright v. Greenfield*, 474 U.S. 284, 298-299, (1986) (Rehnquist, J., concurring). The State may not use a defendant's silence in its case-in-chief to plant in the minds of the jury the idea "that innocent people speak to police to clear up misunderstandings, while guilty people consult with their attorneys." *Leach* at ¶ 32. "[T]he [S]tate's substantive use of the defendant's pre-

arrest, pre-*Miranda* silence substantially subverts the policies behind the Fifth Amendment privilege against self-incrimination and is not a legitimate governmental practice." *Id.* at ¶ 37. If an appellate court determines that the State improperly used a defendant's silence as substantive evidence of guilt in its case-in-chief, the court then must examine whether the State's error constituted harmless error beyond a reasonable doubt. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 162.

**{¶43}** There was only one instance at trial where Abraham's pre-arrest, pre-*Miranda* silence was referenced. That reference occurred during the State's redirect examination of Detective Linda Rinear. On direct examination, Detective Rinear explained that she investigated Abraham after Children's Services contacted her and eventually went to Abraham's home to collect his computer. Detective Rinear indicated that Abraham signed a consent form, allowing the police to search the computer. On cross-examination, defense counsel repeatedly stressed Abraham's cooperation during Detective Rinear's investigation. Specifically, defense counsel asked whether Abraham had returned Detective Rinear's phone call after she had left him a voicemail, "willingly" came to the sheriff's office to meet with her, "voluntarily" spoke with her, and "voluntarily" signed the consent form to allow her to examine his computer. Detective Rinear answered each question in the affirmative. On redirect examination, the following exchange took place:

> [PROSECUTOR]: And the consent to the computer, did he give that the first time you requested that or did you talk about that issue more than just one-time question? (Sic.)
>
> [DETECTIVE RINEAR]: [Another detective] asked. Mr. Abraham stated that he didn't know if he needed to talk to an attorney or he may want to talk to an attorney. [The other detective] asked him, I believe he –
>
> [PROSECUTOR]: I don't want to get into all the details.
>
> [DETECTIVE RINEAR]: I'm sorry.

[PROSECUTOR]: I guess eventually then he consented without * * * further consultation. Is that accurate?

[DETECTIVE RINEAR]: Correct.

The State never again referenced Abraham's statement that he might want to talk to an attorney.

{¶44} Abraham did not object to the foregoing testimony, move to strike it, or ask the court for a curative instruction. Instead, Abraham moved for a mistrial on the basis that Detective Rinear's response was fatally prejudicial to his defense. Abraham maintains on appeal that, because the State did not introduce overwhelming evidence of his guilt, he was unduly prejudiced by the reference to his pre-arrest, pre-*Miranda* silence in the State's case-in-chief. *See Leach* at ¶ 38 ("Because the evidence of guilt was not overwhelming in this case, the admission of defendant's pre-arrest, pre-*Miranda* silence was clearly prejudicial.").

{¶45} This case is distinct from *Leach* in that the State never affirmatively sought to use Abraham's silence as evidence. *Compare id.* at ¶ 4-7 (State remarked on defendant's silence during opening statement, repeatedly asked about his silence on direct examination, and introduced the *Miranda* rights form he later signed into evidence). As appellate counsel conceded at oral argument, there is no evidence that the State sought to elicit the response that Detective Rinear gave. *Compare State v. Riffle*, 9th Dist. No. 07CA0114-M, 2008-Ohio-4155 (State improperly used pre-arrest silence as substantive evidence of guilt multiple times in its case-in-chief and in closing argument). Indeed, the prosecutor interrupted Detective Rinear when she began to discuss Abraham's reference to possibly needing or wanting an attorney. The reference was "brief and isolated." *Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, at ¶ 162. Moreover, it was vague. The thrust of *Leach* and its progeny is that the State may not use a defendant's unwillingness to talk to the police to infer his guilt. *See id.* at ¶ 155-156. Detective Rinear's testimony does not support the conclusion that Abraham even invoked his right to

remain silent or was unwilling to talk to the police. Abraham was already at the sheriff's office when the police asked him to consent to a search of his computer and he said he might want to speak to an attorney. One cannot discern from the record how much time elapsed between Abraham's statement and his decision to sign the consent form. Because the prosecutor interrupted Detective Rinear's response, her response lacks context. It is unclear whether Abraham actually was silent for any amount of time, or if he simply pondered whether he might want an attorney before he then read the consent form and signed it without further discussion. The only conclusion to be drawn is that, at some point before Abraham left the sheriff's office, but perhaps not immediately, he signed the consent to search form. The instant case is distinguishable from one in which the State uses a defendant's silence against him and thereby "substantially subverts the policies behind the Fifth Amendment privilege against self-incrimination * * *." *Leach* at ¶ 37.

{¶46} Even assuming that the State violated the principles set forth in *Leach*, we do not agree with Abraham's assertion that the error was inherently prejudicial. As set forth above, a violation of a defendant's right against self-incrimination is subject to harmless-error review. *Powell* at ¶ 162, citing *State v. Thompson*, 33 Ohio St.3d 1, 4-5 (1987). Abraham avers that he was prejudiced by the State's error because the evidence of guilt in this case was not overwhelming. He notes that there was no physical evidence and the State's case hinged upon the credibility of the victim. Yet, the evidence the State set forth on the rape and gross sexual imposition charges was distinct from the evidence the State set forth on the charges for the illegal use of a minor in a nudity-oriented material or performance and pandering sexually oriented matter involving a minor. While it is true that the State's case on the two former charges hinged upon credibility, the State's case on the two latter charges did not. In support of the latter two

charges, the State introduced two pornographic images taken from Abraham's computer, and Abraham himself testified that it was entirely possible that he had viewed those two images at some point. The primary issue for debate was whether the people depicted in the images were, in fact, children, and the State's expert testified that they were. To the extent that Abraham invoked his right to remain silent or expressed his unwillingness to talk to the police, he did so at the time that the police asked for consent to search his computer. The only question, therefore, is whether the State presented overwhelming evidence of Abraham's guilt as to the charges arising from the search of his computer.

**{¶47}** Based on our review of the record, we conclude that the evidence the State introduced on the two charges outweighed any prejudicial effect that resulted from the allegedly improper reference to Abraham's silence. Abraham admitted to viewing pornography on his computer, the State uncovered two specific pornographic images on Abraham's computer, Abraham admitted that he might have viewed the two images at some point in time, and the State presented expert testimony that the images depicted children. There was overwhelming evidence to establish Abraham's guilt with regard to these charges. *See Powell* at ¶ 162. Moreover, as previously discussed, the allegedly improper reference to Abraham's silence was "brief and isolated." *Id.* Abraham has not shown that he was prejudiced as a result of Detective Rinear's testimony. Thus, the trial court did not abuse its discretion by refusing to declare a mistrial. Abraham's first assignment of error is overruled.

### III

**{¶48}** Abraham's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

BELFANCE, J.
CONCURRING.

{¶49} I concur. I write separately to briefly discuss Mr. Abraham's fifth assignment of error. As noted by both the main and separate opinions, because Mr. Abraham failed to renew his Crim.R. 14 motion to sever at the end of the State's case or the conclusion of all of the evidence, he has forfeited the issue on appeal. *See, e.g., State v. Hatfield*, 9th Dist. No. 23716, 2008-Ohio-2431, ¶ 14. Thus, Mr. Abraham is limited to asserting plain error on appeal. *See*

*State v. Miller*, 9th Dist. Nos. 10CA009922, 10CA009915, 2012-Ohio-1263, ¶ 18; Crim.R. 52(B). To establish plain error, "[f]irst, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be plain within the meaning of Crim.R. 52(B), an error must be an obvious defect in the trial proceedings. Third, the error must have affected substantial rights." (Internal quotations, alterations, and citations omitted.) *State v. Hardges*, 9th Dist. No. 24175, 2008-Ohio-5567, ¶ 9.

> To prevail on his claim that the trial court erred in denying his motion to sever, *the defendant has the burden of demonstrating* three facts. He must affirmatively demonstrate (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it *abused its discretion* in refusing to separate the charges for trial.

(Emphasis added.) *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992). Furthermore, in analyzing the prejudice prong under *Schaim*, "a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *Id.*

{¶50} The record contains Mr. Abraham's motion to sever that was considered and denied by the trial court. The motion is less than two pages in length and does not provide any argument explaining how the failure to sever the counts would prejudice him. No hearing was held on Mr. Abraham's motion. And while it appears that it is possible additional discussions concerning severance occurred off the record, there is no further information or more detailed argument about the merits of Mr. Abraham's motion contained in the trial court record. Thus, given the considerable discretion of the trial court concerning severance and the absence of any detailed information or legal argument provided to the trial court in support of his motion, Mr.

Abraham faced a fairly formidable task in order to demonstrate reversible error in this matter, much less plain error. I cannot conclude that he succeeded in demonstrating plain error.

{¶51} On appeal, Mr. Abraham does not explain how his rights were prejudiced as defined in *Schaim*, nor does he analyze the remaining factors outlined in *Schaim* in assessing whether the trial court committed a plain error. For example, he does not explain how the brief motion before the trial court provided it with "sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial[.]" *Schaim*, 65 Ohio St.3d at 59. Thus, based upon the record before this Court, I cannot conclude that the trial court committed plain error in denying Mr. Abraham's motion to sever.

{¶52} In light of the foregoing, I concur that Mr. Abraham's fifth assignment of error is properly overruled.

DICKINSON, J.
DISSENTING.

SEPARATE TRIALS

{¶53} Nadeem Abraham's fifth assignment of error is that the trial court incorrectly denied his motion to sever the gross-sexual-imposition and rape counts from the pandering and illegal-use-of-a-minor charges. Before trial, Mr. Abraham moved to sever the counts, "[p]ursuant to Criminal Rule 14 . . . for trial purposes" because "the alleged child pornography has nothing to do with the specific allegations of Rape and Gross Sexual Imposition herein." The trial court denied his motion. Mr. Abraham renewed his motion at the beginning of the trial, but not at the close of the State's case.

{¶54} The majority has correctly concluded that, because Mr. Abraham did not renew his motion to sever at the end of the State's case, he forfeited his ability to raise this issue on

appeal. *State v. Owens*, 51 Ohio App. 2d 132, 146 (9th Dist. 1975). In his reply brief, Mr. Abraham has raised two alternative arguments. His first argument is that, even though he cited Criminal Rule 14 in his motion, his motion was, in substance, a motion under Criminal Rule 8. His second argument is that the trial court's failure to sever the counts was plain error.

{¶55} The majority has not addressed whether Mr. Abraham's motion to sever was actually a Criminal Rule 8 motion rather than a Criminal Rule 14 motion. Under Criminal Rule 8(A), "[t]wo or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Under Criminal Rule 14, "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

{¶56} The difference between a motion under Criminal Rule 8 and a motion under Criminal Rule 14 is that "Rule 8 is concerned with the propriety of joining offenses in the indictment" while Rule 14 is concerned with the propriety of trying both cases at the same time. *United States v. Terry*, 911 F.2d 272, 276 (9th Cir. 1990); Crim. R. 14. In his motion to sever, Mr. Abraham did not argue that the State could not join the charges in the same indictment, he only argued that "he would be prejudice[d] by a joinder . . . for trial purposes." Accordingly, he has not established that the trial court should have treated his motion as a motion under Criminal Rule 8.

**{¶57}** Regarding whether the trial court's failure to sever the counts was plain error, the majority, in paragraph 11, has suggested that Mr. Abraham made "no attempt to explain why evidence that his computer contained child pornography would be inadmissible in his trial for sexually abusing a child victim." Two sentences later, however, it acknowledges that "[h]e . . . argues that the court erred . . . because the admission of pornographic images [in] a sexual abuse trial has a prejudicial effect." The majority's second statement is the factually correct one because Mr. Abraham specifically argued in his brief that joinder of the counts was prejudicial because "[t]he obvious inference would be that if the jury heard the computer crimes evidence, . . . they would be more likely to believe that if [he] looked at child pornography . . . , he would then be more likely to commit sexual offenses against [his 8-year-old granddaughter]."

**{¶58}** As the majority has noted, "[if] a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *State v. Schaim*, 65 Ohio St. 3d 51, 59 (1992). I agree that the evidence of each crime in this case was simple and distinct. I do not agree, however, that the fact that Mr. Abraham had pictures of naked children on his computer would have been admissible at a trial on only the rape and gross sexual imposition charges and vice versa.

**{¶59}** Subject to certain exceptions, Rule 404(B) of the Ohio Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." In *State v. Knisley*, 2nd Dist. No. 22897, 2010-Ohio-116, the Second District Court of Appeals recognized that evidence that the defendant possessed child pornography would not be admissible at a trial on child rape charges. *Id*. at ¶ 58-9; *see also State v. Brown*, 9th Dist. No. 25287, 2011-Ohio-1041, ¶ 52 (Belfance, P.J.,

dissenting) (explaining that the mere fact that someone is "the type of person who would view a pornographic website with teen-like images" does not mean that "he must be the type of person who would sexually assault a teenage girl."). There was no evidence that Mr. Knisley's "use of child pornography for sexual gratification made it more likely that he would engage in sexual conduct with [his step-daughter] or that the 'sexualized environment' in the home was part of a plan to rape [the step-daughter]." *Knisley*, 2010-Ohio-116, ¶ 58. Not only was the pornography evidence not relevant to the rape charges, it was of such an inflammatory nature that "[i]t would be the type of evidence precluded by Evid.R. 404(B) because it would be stronger evidence of [Mr. Knisley's] character than of his motive or intent." *Id*. at ¶ 59.

{¶60} As the majority has acknowledged, because there was no physical evidence of the sexual abuse, the jury assessed Mr. Abraham's guilt entirely on his and I.D.'s credibility. During the trial, Mr. Abraham brought out inconsistencies between I.D.'s testimony and what she told investigators after first reporting the abuse. The fact that Mr. Abraham had pictures of naked children on his computer, however, significantly bolstered her testimony because it verified that Mr. Abraham has a sexual attraction to young children. On the other hand, Mr. Abraham strained his credibility by claiming that he only discovered that there is pornography on the internet because he stumbled across it while looking for the website for BJ's Warehouse Club. That issue would not have come up if the counts had been tried separately.

{¶61} Upon review of all the evidence in this case, I believe it was plain error for the trial court to try the child sexual abuse charges at the same time as the pornography charges. Crim. R. 52(B) (providing that plain errors may be "noticed although they were not brought to the attention of the court."). I, therefore, would sustain Mr. Abraham's fifth assignment of error and remand for a separate trial on each set of offenses.

SUFFICIENT EVIDENCE

**{¶62}** Although I would remand this case for separate trials, for double jeopardy purposes it is necessary to address whether the State presented sufficient evidence on each count. Regarding the rape and gross sexual imposition charges, I agree with the majority that I.D.'s testimony, viewed in a light most favorable to the prosecution, was enough to support his convictions. Regarding the pandering and illegal-use-of-a-minor charges, however, the issue is more complicated.

**{¶63}** The pandering charge was under Section 2907.32.2(A)(5) of the Ohio Revised Code. Under that section, "[n]o person, with knowledge of the character of the material or performance involved, shall . . . [k]nowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor participating or engaging in sexual activity . . . ." R.C. 2907.32.2(A)(5). The evidence in the case was that the hard drive of the computer that Mr. Abraham shared with his wife contained a jpeg image file that depicted a young girl performing fellatio on a boy. Detective Daniel Sladek testified that his forensic examination of the hard drive revealed that the file had been created and accessed on March 26, 2010, and modified on April 3, 2010. While the indictment originally alleged that Mr. Abraham possessed the image on or about May 19, 2010, the State amended the indictment at the beginning of trial to specify that the "offense occurred on or about . . . the 26th day of March 2010, to on or about May 19th, 2010." Viewing the evidence in a light most favorable to the prosecution, it was sufficient evidence to support a conviction under Section 2907.32.2(A)(5).

**{¶64}** The illegal-use-of-a-minor count was charged under Section 2907.32.3(A)(3) of the Ohio Revised Code. Under that section, "[n]o person shall . . . [p]ossess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity[.]"

R.C. 2907.32.3(A)(3). The evidence of that charge was not as strong and the indictment was not as broad as the pandering charge. The indictment alleged that, "on or about the 19th day of May, 2010," Mr. Abraham "recklessly did possess or view any material . . . that shows a minor . . . in a state of nudity, in violation of Section 2907.323(A)(3) . . . ." Detective Sladek testified that, while his forensic examination of the hard drive on May 19, 2010, uncovered the picture of the young girl in the bathtub, he said that the file was stored in "unallocated space" and that it did not have a "create, access, or modify date or time."

{¶65} According to Detective Sladek, "[u]nallocated space is just extra space that at one time items could have been stored on and they've been deleted from the normal user's ability to draw on them again." He explained that, "[o]nce you delete a file, what the user basically does is click to delete the thing. The computer makes a notation at the beginning of the file that that space is open for storage if needed and the user doesn't want to do anything with that file again." He also explained that the reason a file in unallocated space would not have a "create, access, or modify" date is because "[t]he computer decides that it's no longer needed and does not keep those for that file." He further testified that, if there are no dates associated with a file "and it's in the unallocated space, it's kind of hard to say how it got there . . . ." *See United States v. Flyer*, 633 F.3d 911, 918 (9th Cir. 2011) ("Even if retrieved, all that can be known about a file in unallocated space (in addition to its contents) is that it once existed on the computer's hard drive. All other attributes—including when the file was created, accessed, or deleted by the user—cannot be recovered.").

{¶66} In *State v. Hurst*, 181 Ohio App. 3d 454, 2009-Ohio-983, the Fifth District Court of Appeals recognized "how computers and the internet can create a quagmire for the prosecution of cases involving child pornography." *Id.* ¶ 67. Quoting *United States v. Polizzi*,

549 F. Supp.2d 308 (E.D.N.Y. 2008), vacated on other grounds by *United States v. Polouizzi*, 564 F.3d 142 (2d Cir. 2009), the court explained that "[o]nline child pornography (or any other electronic image) is typically received and viewed via email, downloading, or file sharing, or viewed on an Internet website. Unwanted or unsolicited emails, popularly termed 'spam,' are transmitted daily in the billions. Many carry commercial messages, are dubious or disguised in nature and origin, and contain pornographic images, including child pornography, or links to pornographic websites. In one study, 'more than 40 percent of all pornographic spam either did not alert recipients to images contained in the message or contained false subject lines, thus making it more likely that recipients would open the messages without knowing that pornographic images will appear.' Opening files—whether received by email or available on a website—in order to view the images may be automatic or manual. Files deliberately downloaded from the Internet and intentionally saved by the user should be distinguished from files automatically stored by the web browser in temporary cache files. 'The term "downloading" generally refers to the act of manually storing a copy of an image on the hard drive for later retrieval.' In contrast, '[t]he internet cache . . . is an area [on the hard drive] to which the internet browser automatically stores data to speed up future visits to the same websites.' 'While you surf the Internet, the computer's web browsers keep copies of all the web pages that you view, up to a certain limit, so that the same images can be redisplayed quickly when you go back to them.' It is possible for sophisticated computer users to access and even 'delete' the automatically stored internet cache files, but computer forensic experts are often able to discover any files so deleted." *Id*. ¶ 68-70 (citations omitted).

{¶67} In *Hurst*, the court noted that, "[i]f your computer is searched, even files that have been dragged to the trash or cached by your browser software are counted as evidence. Some

offenders have been sent to jail for 'possessing' images that only a computer-forensics technician can see." *State v. Hurst*, 181 Ohio App. 3d 454, 2009-Ohio-983, at ¶ 70 (citing Steve Silberman, *The United States of America v. Adam Vaughn*, Wired News, Issue 10.10, Oct. 2002, at 3). "Once a computer receives an illicit image by any method, whether spam email, intentional downloading, loading of a CD–ROM, file sharing, etc., the computer user possesses 'matter' containing child pornography, even before viewing the electronic screen. The images are in the computer and available for viewing. When he or she intentionally or unintentionally sees the child pornography pictures, the user 'knowingly possesses' them—even if the images were unsolicited, unwanted, or a complete surprise. The possession charged is purely passive." *Id*. ¶ 72.

{¶68} In *Hurst*, the Court concluded that the evidence supported the inference that the images on Mr. Hurst's computer did not appear by accident, noting that he had performed internet searches for "amazing preteen; elite preteens; family incest tree; free young; young porn; innocent youth; preteen angels; and shameless preteens, little angels, top ten Lolita nude and pixyoung.com, teentray.com, tinyteenthongs.info." *State v. Hurst*, 181 Ohio App. 3d 454, 2009-Ohio-983, at ¶ 86. In this case, the parties stipulated that "[a]n analysis of the hard drive . . . reveal[ed] the regular presence of cookies containing file names associated with teen pornography and similarly named sites over a two-year period." There is an important difference, however, between searching for "teen" websites looking for pictures of naked women who are 18 or 19 and searching for "preteen" pornography, as in *Hurst*.

{¶69} All that the evidence in this case establishes is that, at some point, Mr. Abraham attempted to delete the image of the girl in the bathtub from his hard drive. We do not know how the image got onto his hard drive, when it occurred, whether Mr. Abraham ever viewed the

image, or when he attempted to delete it. I agree with the Ninth Circuit that "deletion of an image alone does not support a conviction for . . . possession of child pornography on or about a certain date." *United States v. Flyer*, 633 F.3d 911, 920 (9th Cir. 2011). There was no evidence that Mr. Abraham knew the image still existed in the unallocated space of his hard drive or that he possessed the type of special forensic software that was necessary to view or recover the image. *See id*. at 919-20. Accordingly, I believe that the State failed to present sufficient evidence that, "on or about the 19th day of May, 2010," Mr. Abraham "recklessly did possess or view" the image. I, therefore, would remand this case for a new trial on the rape and gross sexual imposition charges and a separate trial on the pandering charge and would direct that Mr. Abraham cannot be retried on the illegal-use-of-a-minor charge.

APPEARANCES:

PETER T. CAHOON and AMANDA T. QUAN, Attorneys at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.